IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES J. EBB, JR., <br><br>   Plaintiff, <br><br>v. <br><br>M. TARAWALLIE, et al., <br><br>   Defendants. | Civil Action No.: SAG-23-804 |

## MEMORANDUM OPINION

Plaintiff James J. Ebb, Jr., a Maryland inmate incarcerated at Eastern Correctional Institution, filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1; ECF No. 6.[1] Defendants M. Tarawallie, Cynthia Moore, Intel Officer Kranich, Captain Shepherd, and Lieutenant Brown (collectively the "State Defendants") filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 19. Ebb was notified of his right to respond to State Defendants' Motion, but, to date, has not filed any response. No hearing is required to resolve the pending matters. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, State Defendants' Motion shall be granted in part.

---

[1] The Court notes that in Ebb's Supplement, the caption also identifies Maryland Correctional Institution – Jessup ("MCI-J") and the Department of Public Safety and Correctional Services ("DPSCS") as Defendants. ECF No. 6. Ebb does not allege any specific wrongdoing against either entity and they were not added as Defendants in the Court's Order issued April 24, 2023. ECF No. 8. Still, to the extent Ebb sought to bring this action against them, the Court finds that neither is subject to suit. Essential to sustaining an action under § 1983 are the presence of two elements. A plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Ebb's Complaint cannot proceed against MCI-J because the prison is not a "person" subject to suit or liability under § 1983.
    Furthermore, under the Eleventh Amendment, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Department of Health v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (*per curiam*)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. As such, DPSCS, a department of the State of Maryland, is immune from suit.

## I. BACKGROUND

### A. Complaint Allegations

Ebb states that on March 10, 2022, while housed at MCI-J, he was assaulted by another inmate who hit him in the head and stabbed his left arm. ECF No. 1 at 2. According to Ebb, this was after he had been maced, so he was unable to see, and his hands were handcuffed behind his back. ECF No. 6 at 2. Officers did not take any action to intervene on Ebb's behalf. *Id.* He contends that he was put in lockup so that he could not inform his family of the attack and so that Defendants could protect their jobs. *Id.* Ebb broadly alleges that Defendants deliberately failed to report his assault even though they recovered the weapon; they also refused to disclose the identity of his assailant. *Id.* Following the assault, he states that he was provided only with a few band aids for his stab wound and was otherwise left to care for it himself. *Id.* at 3. He states that he still loses feeling in his arm and his requests for diagnostic imaging have been ignored. *Id.*

Ebb, who is now housed at ECI, also states that he has been experiencing blood in his stool but the medical staff refused to see him and refused to renew his blood pressure medication. ECF No. 1 at 2. He further complains that the medical staff falsified documents because his records do not contain any documentation of his assault and one sick call slip incorrectly marked him as a "no show" to his appointment. *Id.* Ebb attaches several complaint forms and sick call requests describing the failure to see him on sick call and to refill his medication as well as complaining about his ongoing pain in his arm and bloody stool. ECF No. 1-1 at 1-9. Ebb claims that "great lengths are being taken to try and cover things up." ECF No. 1 at 2. Ebb seeks monetary damages. *Id.* at 4.

### B. State Defendants' Response

State Defendants assert that Ebb did not file any administrative remedy procedure complaints ("ARPs") regarding his allegations of failure to protect, report falsification, his assignment to administrative segregation, or requests for injury photos. ECF No. 19-1 at 7. The Administrative Remedy Coordinator for MCI-J, Krystal Morton, attests that between March 1, 2022, and April 27, 2023, when Ebb was transferred out of MCI-J, Ebb filed two ARPs. ECF No. 19-16 at ¶ 2. The first, No. MCIJ 0137-22, concerned damage to Ebb's Xbox and the second, No. MCIJ 0141-22, concerned a failure to provide him with a dinner tray. *Id.* at pp. 3-10.

Sandra Holmes, an Administrative Officer for the Inmate Grievance Office ("IGO"), further attests that following the March 10, 2022, incident, Ebb filed two complaints with the IGO. His first complaint, No. 20221403, complained about access to a photograph mailed to him; his second complaint, No. 20220489, concerned an appeal of a 2021 disciplinary matter. ECF No. 19-17 at ¶ 2. Ebb appealed No. 20221403 to the Maryland Office of Administrative Hearings, which concluded Ebb's grievance was without merit. *Id.* at pp. 11-21. Ebb's second complaint was dismissed by the IGO. *Id.* at 22-53.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

State Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61

(4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because State Defendants filed their motion styled as a motion to dismiss, or in the alternative, for summary judgment, Ebb was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

### III.   DISCUSSION

State Defendants seek dismissal of the Complaint or summary judgment in their favor because (1) Ebb failed to exhaust his administrative remedies, (2) Ebb fails to state a claim for failure to protect; (3) State Defendants were not deliberately indifferent to a medical need; (4) Ebb fails to state a claim for conspiracy; (5) Ebb's segregation and photograph claims do not violate his Eighth or Fourteenth Amendment rights; (6) there is no respondeat superior liability; and (7) qualified immunity precludes liability. ECF No. 19-1.

#### A. Conspiracy

First, to the extent Ebb seeks to bring a claim for conspiracy, he fails to state a plausible claim for relief. Ebb alleges that State Defendants "deliberately left out [Ebb] being struck in the head with some kind of object & [Ebb] being stabbed" from their report. ECF No. 6 at 2; *see also* ECF No. 6-1 at 1-2. He also generally contends that "great lengths are being taken to try and cover things up." ECF No. 1 at 2.

To establish a civil conspiracy under § 1983, a plaintiff must show that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421

(4th Cir. 1996). An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N. Carolina Agr. Extension Serv.*, 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 639 F.2d 1073, 1075–76 (4th Cir. 1981).

Here, Ebb does not allege any facts which would suggest that there was an agreement amongst State Defendants to violate his constitutional rights. He has not identified what actions any of the individual State Defendants took, or any facts to suggest they agreed amongst themselves. As such, Ebb's Complaint fails to state a claim for conspiracy under § 1983 and must be dismissed.

### B. Exhaustion of Administrative Remedies

State Defendants assert that Ebb failed to exhaust administrative remedies with regard to his "post-incident housing claims," which appear to include his failure to protect claim and his claims concerning his segregation housing, request for photographs of his injuries, and report falsification. ECF No. 19-1 at 11. Failure to exhaust administrative remedies is an affirmative defense. The PLRA provides, in pertinent part: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The … PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines …." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency

addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

The Department of Public Safety and Correctional Services ("DPSCS") has established ARPs for use by Maryland State prisoners for "inmate complaint resolution."  *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] …."  C.S. § 10-206(a).  Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  COMAR 12.07.01.01(B)(7).  To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee.  *See* C.S. § 10-206(a).  When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.  However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for

8

management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[2] When filing with the IGO, a prisoner is required to include copies of the following:  the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing …." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07–.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

---

[2] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10-209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Here, it is undisputed that Ebb failed to file an ARP raising his allegations regarding failure to protect, report falsification, his assignment to administrative segregation, or requests for injury photos. Nothing in the record shows that Ebb filed any ARP concerning these issues, much less that he completed the entirety of the grievance process before initiating this case. Ebb appears to acknowledge as much in his Complaint and Supplement in which he indicates that he did not appeal any grievances. ECF No. 1 at 2; ECF No. 6 at 2. Furthermore, the informal grievances attached to the Complaint only raise medical issues and are not the formal ARP complaints required to exhaust DOC administrative remedies. *See* ECF No. 1-1 at 1-4. Therefore, given Ebb's failure to properly exhaust his administrative remedies, his claims for failure to protect, the falsification of records, assignment to administrative segregations, and request for photographs cannot proceed. State Defendants are entitled to summary judgment in their favor.

**C. Medical Care**

10

Finally, State Defendants argue that they were not deliberately indifferent to Ebb's medical needs. ECF No. 19-1 at 16. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting

11

*Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

If the required subjective knowledge is established, a defendant may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive

12

risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (transgender inmate stated plausible claim in alleging defendant's refusal to evaluate her for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

Here, State Defendants all attest that they are not licensed health care providers and that they do not have the authority to provide treatment, nor did they attempt to interfere with any medical decisions concerning Ebb. *See* ECF No. 19-3 at ¶ 15; ECF No. 19-4 at ¶ 18; ECF No. 19-9 at ¶ 12; ECF No. 19-10 at ¶ 13; ECF No. 19-11 at ¶ 13. Furthermore, neither Ebb's Complaint nor Supplement attribute any of the alleged wrongdoing to any of the State Defendants. As such, even assuming that Ebb presented with a serious medical need, the record shows that none of the State Defendants acted with deliberate indifference and are therefore entitled to summary judgment on these claims.

Ebb names only "Eastern Correctional Institution Health Care Personnel" as the sole medical defendant. As Ebb proceeds *in forma pauperis,* the Court attempted to serve this defendant, however, counsel for the medical care provider responded stating that service could not be accepted because this was "insufficient information to determine whom [Ebb] is attempting to name as a defendant." ECF No. 10 at 1. In light of the extensive allegations Ebb has made regarding his lack of medical care, the Court will grant him a final opportunity to amend his complaint and identify the individual medical care providers which he asserts are responsible for the misconduct alleged in the Complaint at either ECI or MCI-J.

Ebb is reminded that his amended complaint will replace the current complaint and supplement. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting

*Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (noting exception for purposes of appellate review of claims dismissed in original complaint that were not included in amended complaint)). Accordingly, Ebb must include all allegations against each of the individual defendants he names so that the amended complaint stands alone as the sole complaint in this case. Ebb is forewarned that failure to timely file the amended complaint will result in dismissal of his medical care claims without prejudice and without further notice from the Court.

### IV. CONCLUSION

By separate Order which follows, the Court will grant State Defendants' Motion to Dismiss, or in the alternative, for summary judgment. Ebb's conspiracy claim is dismissed and State Defendants are entitled to summary judgment on the remainder of Ebb's claims. Ebb will have 28 days in which to file an Amended Complaint identifying the individual medical providers he alleges failed to provide him adequate medical care.

August 8, 2024  /s/
Date  Stephanie A. Gallagher
  United States District Judge